Good morning, Your Honor. My name is Brian Vincent. I'm the Deputy Prosecuting Attorney representing the Respondent Appellant, Mr. Thomas. Very well. You may proceed. The District Court erred by mechanically applying the rule established in Brooks v. Tennessee to the qualitatively different factual situation presented by this case. In Brooks, Brooks had all of his witnesses ready to go. So the only issue there was whether or not Brooks would testify before or after his other witnesses. Here, Loher did not have his witnesses ready when the time came to present his case. And consequently, he had to ask the trial court for a continuance in order to, he would have had to ask for a continuance in order to get... Counsel, you must be reading a different case than I. My understanding is that in this case, the prosecution had a rather lengthy list of witnesses and suddenly decided not to call a significant number of them. So the court ended up at the end, roughly end of the day with roughly two hours. The defense lawyer, not surprisingly, wasn't counting on having his witnesses available because the prosecution was going to take the whole day, maybe the next day. So he scrambled around and the judge forced him to go forward and make an election with respect to his client, which seems to be on all fours with Brooks. What am I missing? Oh, well, first, I don't think there's any support on the record for the idea that the trial prosecutor in this case tried to wrong-foot the defendant by putting all these people on the list. He was all in perfectly good faith, but he decided not to do it. He had a list that suggested there were a lot more witnesses, right? That's correct. He didn't call them. How many were not called that were on the list? I don't know. I didn't look at the witnesses. I think it was 14 names. 14, okay. And he called four. Four, okay. So he didn't call 10. Yeah, and I believe most of these were probably forensic people. Chain of custody type of people. Chain of custody kind of people. At some point, she felt that they weren't necessary because there really was no forensic. Well, we've got a factual finding here, do we not, on habeas by the trial court that defense counsel never talked to the prosecutor to inquire as to how long the state's case-in-chief was going to take? That's correct. And when I was trying cases, I mean, it was just a cardinal rule of practice that the two lawyers talk to one another to try and figure out how long are you going to take until you're ready, and that didn't happen here because of the defense lawyer's fault. That's correct. And they ran out of witnesses with half the trial day yet to go. And it turns out to be a pretty simple case. If you don't have the forensic people to testify because it's basically a plain witness thing, which you saw in the 9-11 tape. Let's assume that the defense lawyer was in error in doing that. Not a good thing from a lawyer practical perspective, but as I understand it, the court here relied upon a Hawaiian court of appeal decision called state versus kiddo to come up with some exemptions or exceptions to Brooks. Is that correct? Yes. And how does a Hawaiian state court of appeal have any authority to carve an exception into a United States Supreme Court case? Well, first of all, I'm not sure if I agree entirely with kiddo's analysis. Well, kiddo didn't even follow it there. In kiddo, they followed Brooks, but they referred to these exemptions. But it seemed to be what the trial court relied upon. I'm just trying to understand by what authority a Hawaii court of appeal could carve out these two exemptions about the congealed decision. And there's a second one. It already congealed, and the second one there was that the defendant had created an exigency. Well, I think the congealed one is almost more of a harmless error argument than it is an exception to Brooks. And the exigency is when you move from the Brooks question into a continuance question. But you've got a Fifth and Sixth Amendment right under the Constitution for the defendant to put on his case. That's correct. In this case, you're saying you've got to put your defendant on right now or he's gone. And he couldn't get hold of the other folks. Those are important constitutional rights, aren't they? The right to counsel and the right to avoid self-incrimination? That's correct. And the right to have a jury trial is also an important right. But along with the right to a jury trial comes the responsibility of the defendant to make sure that the jury's time is not wasted unnecessarily. And that's the choice. And when was that going to happen here? There was two hours left in the day, and the judge didn't want to waste the jury's time. Would the defendant be delighted to get out two hours early? I've never seen a juror that wasn't. Yeah, jurors like to leave, no doubt about that. But they're not going to be so delighted if they know that they have to come back the next day and they're going to be there an extra two hours the next day. And that's essentially what's going to happen here. If it's not done now, it's going to be done an extra two hours. So that's the tradeoff, the defendant's Fifth and Sixth Amendment rights versus two hours for the jury. Well, I think – Is it a tradeoff? Contrary to a United States Supreme Court precedent, it has to be completely irrelevant. Well, we're looking at the Intermediate Court of Appeal decision, are we not? And the question of whether that was an unreasonable determination of federal constitutional law. That's correct. Okay, why don't you focus on that? That's the issue in front of us here. That issue was decided adversely in the district court to your side. Why was the district court wrong? The district court was wrong because the rule in Brooks does not apply in the same way to this type of situation as it did to the situation in Brooks. It requires an extension of the rule of Brooks, I believe, in this case, in order to come up with a decision that the district court came up with in this case. And that extension is that the court is required in certain circumstances to grant a continuance in order for the defendant to testify last. Counsel, in what way are the facts of this case and the facts of Brooks different? The continuance, and that was the case in the 10th Circuit case that I cited in my opening brief as well, where they decided that in that case it was about two hours as well, and they decided that the court did not abuse its discretion in requiring the defendant in that case to testify in the remaining two hours left in the day in the court in that case. Are you saying, it seems to me that there's a tension here between Rule 611, which under Hawaii rules is virtually identical to the federal rule of evidence, 611, which says that the court shall control the manner and method of interrogation and the order of proof. And the question here, based on the findings of the trial court, the circuit court, was if counsel had conferred with the prosecutor, he would have known that he needed to have defense witnesses available that afternoon to start the defense case. And the court found he didn't do that. As a result of that, he got caught flat-footed when the prosecution finished its case in chief, and the court said to the defense, call your witness. And the defense lawyer said, I don't have any witnesses. And the judge said, well, I'm not going to waste two hours or two and a half hours of court time and send the jury home early because you didn't prepare your case. So call your client if he's going to testify. And so the question is, is that a Brooks violation? And the Intermediate Court of Appeals said it was not. And I guess what we're struggling with is why not? The reason is because Brooks is a simple right-wrong rule. I mean, if all the witnesses are there, the defendant either gets to go last or not, right? And it's a simple rule to follow. As soon as you ask for continuance, then it becomes an abuse of discretion. Well, I thought Brooks dealt with, wasn't it a Tennessee statute that said, if you're going to call your client and all, he's got to testify first because we don't want him basically tailoring his testimony by listening to the testimony of the previous defense witnesses. That's correct. But Brooks also says, I forget the exact wording, but it pays tribute to Rule 611, and it says we're not saying that the trial judge doesn't have the authority to control the way in which the trial is held. And so here, we weren't dealing with a statute that said the defendant must testify first if he's going to testify at all. We ran into a situation where the defense didn't have any witnesses available except the defendant. And the judge said, if you've got a witness to start the defense case, call him now. We're not going to waste any more time. And then there's also a finding by the intermediate courts after an evidentiary hearing that the defendant intended to testify all along, so there's no real issue about whether or not he was forced to testify. We've got a finding that he wasn't, that he really wanted to testify. So I don't really see how Brooks applies on these facts. I think that it only applies tangentially. I mean, I think it's one of those things that the judge needs to consider when he's ruling on the continuance in the case. So the question is, is it not under AEDPA? Was it objectively unreasonable for the intermediate court of appeal to conclude that Brooks did not control in this situation and that it was not improper to order the defense to proceed with its case? No, the ICA did not err when it concluded that . . . It was not objectively unreasonable. That's the test we apply. Not objectively unreasonable. All right. So, I mean, the rule is when there's a continuance, and this is a case that I didn't cite in my briefs, but I gave counsel a copy called Morris v. Sloppy, 461 U.S. 1. And here's what they have to say about continuances. The trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances. Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel.  Okay, before you leave the chamber, I have a copy of the case for you. So . . . Also, you know, just one detail. One of the disabuses of the court of the idea that I think the defense counsel or the appellee suggested that they could have settled jury instructions during that two hours. Okay? Jury instructions were settled on the next day, Wednesday, which was a court day off. The jury wasn't going to be there. It wasn't scheduled to be there anyway. So it didn't waste the jury's time by not doing the jury instruction. I mean, it wouldn't have resulted in a saving in the juror's time had it been done during that two hours. Counsel, I'm interested in the ineffective assistance of appellate counsel claim. Did you preserve that claim? Did the petitioner, I guess you're asking, did the petitioner preserve that claim? Well, as I read the briefing, the issue really wasn't raised. Well, let's put it this way. It wasn't raised on direct appeal. Right. Correct. And the appellate counsel admitted at the Rand hearing that he was not aware of Brooks. Right. And, therefore, you know, I think that makes the claim that he wasn't, he didn't know the law, right? So that satisfies the first part of the Strickland test. But it would have to result in the impairment of a meritorious defense. And the argument in this case was it did not result in an impairment of a meritorious defense in this case. So it didn't satisfy the second prong of the Strickland rule. But did you raise that issue in your opening brief? I didn't get into that. Okay. Then there's a waiver issue then. I mean, obviously you're saying it was not waived, but that's an issue, right? Yeah. I'm not sure what you're getting at. But I didn't bring that up and go into that in detail in my opening brief. Very well. Can I ask a quick question? My colleague, Judge Tallman, has asked, I think he stated that in the hearing, there was a finding that the defense lawyer did not consult with the prosecution about timing and, therefore, failed. That's correct. My reading of the record suggests that the prosecution's witness list was filed one day prior to this date on which the thing ended early. Is that correct? Is that your understanding? I cannot tell you. This is ER 3 colon 159. If that's true, how could defense counsel have been really negligent if, quite literally, the day before this occurred, he filed this lengthy list? Was his obligation to ask every hour of the prosecuting attorney when he was going to finish his case? I think he should have discussed, at least had a talk with the prosecutor. How often, though? He didn't do it every hour. I think that just talking to him before the court started that day would have been sufficient. The problem was he didn't talk to him at all. That's my understanding. There was no discussion. Thank you, counsel. Your time has expired. We will hear from Mr. Wolfe. Good morning. May it please the court. I'm Peter Wolfe. I represent Mr. Loher, the appellant in this appeal. Brooks has two rules that are articulated by the Hawaii Supreme Court. One is you can't force the defendant to either testify first or not at all. That happened here. And the second part of the rule – So you don't think that that case is distinguishable on the fact that there was a statute under Tennessee law that said in every case where the defendant is going to testify, he must testify first? It might be distinguishable in some cases but not here because what the trial judge did was he told defense counsel at the state court trial, no, your client is going to testify now or not at all. And if he elects not to testify, we'll take the continuance. But what do you do with the finding that he intended to testify all along? I mean, unfortunately – That finding is not in the trial court record. That was the record that was made on remand almost 10 years later when the ICA remands the case to look into the question of why appellate counsel didn't raise the issue. Why isn't that fairly considerable by us when we're reviewing the decision of the Intermediate Court of Appeal on habeas? Because it was unreasonable, objectively unreasonable for the ICA to remand the case to the circuit court to figure out what were the tactical reasons why something happened at the trial when the record was complete in the trial record. What case can you cite to me that says it's reversible error for a state court to flesh out the record when it is considering a personal restraint petition and feels that there are issues that are unresolved because the facts have not been settled? Well, the ICA remanded for an inquiry into why Mr. Loher's appellate counsel didn't raise the Brooks issue on appeal. And he said why he didn't. He didn't even know about the rule of Brooks. But there was nothing in the remand that suggested they ought to go revisit the record established in the trial court in 2001 as to why Mr. Cugia and Mr. Loher, what their decisions had been, what – Why isn't that relevant to both claims, both the Brooks claim and the Fifth Amendment claim? Well, they're both Brooks claims, the Fifth Amendment as to the right to silence and the Fifth Amendment as to due process. I just – I found your argument here, Mr. Wolf, to be very curious because normally the issue that we hear about on habeas is that the state courts failed in their fact-finding or adjudication by not reaching issues that are presented to us for the first time on federal habeas relief. But now you're making just the opposite, that they did too much. They made the record more complete and that that somehow – well, let me finish the question. That somehow justifies the grant of a federal writ of habeas corpus. And I'm curious as to what case you would cite in support of your position. Well, I don't have a case to cite. I didn't think so. The reason why it was unreasonable is because there was no question about why or what Loher's decisions were in the trial court record. But why isn't it relevant to us in adjudicating the claims that you are pursuing on federal habeas? It's not relevant because the whole inquiry of trial counsel that takes place nine or ten years after the trial is based on the mistaken proposition by trial counsel that it's his ineffectiveness that's being litigated, which it isn't. I mean, that may be the motive that colored the witness's testimony, but that's for the trier of fact to resolve in determining the credibility of the information that he's providing. I mean, I can understand why you don't like what he said on the record because it undercuts your position. But I'm still having a difficult time understanding why in adjudicating the writ we should just ignore what the record shows. It's a very curious argument. Well, it doesn't matter. Here's why it doesn't matter. Because the record on remand of trial counsel establishes beyond all question a violation of the second prong of the Brooks rule, which is that the court cannot interfere with the right to counsel as to when the defendant will testify. So is your position that Brooks commands that in every trial the defendant gets to decide, even if it results in a delay or disruption of the trial, when he's going to testify? Yes. That's right. That's the black letter rule in Brooks. I think that's right. Then how do you explain the language in Brooks with regard to we do not mean to suggest that we are interfering or hamstringing the judge under Rule 611? Is that just dicta that means nothing in Brooks? No, I think that it means something, but it doesn't mean that the court can tell the defendant, as has happened in this case, look, you'll testify now or not at all.  And if the defendant says, look, I'm going to testify, but I want to testify last, that requires some evaluation of the circumstances. Let me quote from Brooks and get your reaction to that in light of my colleague's comment. This is from page 613 of Brooks. The court said, while nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and his counsel may not be restricted in deciding whether and when, in the course of presenting his defense, the accused should take the stand. Does that bear in any way on your colloquy with my colleague? I believe it's dispositive of that. But isn't that based on the statute in Tennessee? But the statute in Tennessee had no different effect than the trial judge's pronouncement in this case. So I don't think that the Brooks case doesn't go off on the fact that it was a statute as opposed to a judge saying it. That really, I don't think, can be the test of whether the Constitution applies or doesn't apply. And so Hawaii doesn't have that statute. So there's even less reason, if you want to look at it that way, for the Hawaii trial judge to do what he did. And the circumstance of the case involves basically a two-hour delay in a circumstance where the state had said they would have 14 witnesses, where both sides had told the trial judge this is going to take four to five days to try this case. But Mr. Wolf, you have a lot of trial experience, and you know as well as I that both sides typically over-designate the number of witnesses they're going to call. Because if you don't include the witness's name on the witness list, the judge isn't going to let you call an unlisted witness. And so it is incumbent upon trial counsel to talk to one another as the trial begins. Who are you going to call today? How long is that witness going to take? Are you going to call this guy? Are you going to call that guy? And a lot of those witnesses are, as Mr. Vincent suggested, custodial chain of custody witnesses, where if you get a stipulation by counsel, you eliminate five witnesses in one fell swoop. I mean, that's just all part and parcel of what trial lawyers do, is it not? Or is the practice here different? That's right, but I think if we're going to weigh the constitutional rights that are at issue here versus two hours when the next day, as Mr. Vincent says, is not going to be a trial session day anyway, it's just unreasonable to think that what the trial judge did in the state court here was the right thing. Suppose that the trial had taken a little longer in the state case in chief and that on Thursday morning at 9.30 the prosecution rested, but the defense thought they were going to go longer and had no witnesses available for the rest of the trial day at 9.30. Would your position be the same? I don't think it would be the same. It would not be the same? It might not be the same, no. And why is that? I mean, you're saying two hours is unreasonable, but all day would be too much? Well, because you should be prepared for the trial. Of course you should. And the question, I guess, is what meaning do we give to the language that Judge Smith quoted from in Brooks? I guess we're really asking what is the scope of that language? Does it mean Brooks trumps in every instance, or does it mean that we have to give trial courts reasonable latitude in order to efficiently conduct trial? Well, I guess I would say that the language in Brooks trumps the ordinary trial judge's concerns about 15 minutes here, an hour there. But just in answering my earlier question, you would agree that 930 on Thursday morning, if it meant that the rest of the day the courtroom was dark, would be unreasonable, even under Brooks? Because we don't have to answer that question inside this case. Well, the question is, was it objectively unreasonable for the Hawaii Intermediate Court of Appeals to look at this record, look at Brooks, and say, we don't think that the defendant's constitutional rights were prejudiced based on the fact that... It was unreasonable, and here's the proof of it. If appellate counsel had done what should have been done, the same issue that the ICA... The ICA panel that decided KEDO some four months after the first appeal in Lohr's case was decided was exactly the same members. So, in other words, if the Brooks issue had been raised in Lohr's case the first time around, then he would have won his ICA appeal on Brooks because KEDO won his. And it was the same members of the same court. And so if you just want to find the easiest way to resolve this case in my favor... Was it Judge John Lim who died in the meantime? So you had a different appellate panel? By the time Lohr's case came around and was resolved on its merits, it was a different group of ICA judges. So would your prediction be the same if it had been the later panel of intermediate appellate judges rather than the KEDO panel? All I'm saying is that it demonstrates the prejudice for the failure of appellate counsel to raise it in the first instance in the direct appeal. Because we know for certain, given that that same group decided KEDO and criticized the exceptions to Brooks that some other courts have adopted and didn't adopt them themselves, that that same group was the group that decided Lohr's direct appeal were the compelling issue... Brooks was never raised at all. So you could decide this case in my favor based on just the failure of appellate counsel to render effective assistance to counsel. Didn't the court of appeal in this case rely to some extent on the reasoning in KEDO? It did. It did. And KEDO, as you pointed out, the court actually decided in favor of the defendant, right? Right. And is it fair to say that the two pronged so-called exceptions to Brooks are probably dicta in the sense they weren't necessary to decide the KEDO case? I think that's right. In fact, the court seemed to have criticized those exceptions and said, we're not going to adopt them. And then a later group did adopt them in the Saleh case. But Saleh was quite a bit different because there the question of whether the defendant would have to testify before his other witness became moot because he did testify before, but then the other witness's testimony was excluded or never came about because he was taking the Fifth Amendment. So there was no other witness. Counsel, where does Harris versus Barkley, the Second Circuit case, fit here? Obviously, I'm focusing on the habeas context of this case in which we have to find if we are to overturn the decision of the Intermediate Court of Appeal that there is a violation of Supreme Court law. The Second Circuit says this, and I'll quote, notwithstanding the plaintiff's argument of the contrary and some of the broad language the court employed in Brooks, we conclude that Brooks does not constitute a general prohibition against the trial judge's regulation of the order of trial in a way that may affect the timing of defendant's testimony. Now, that's a decision from a different circuit. It doesn't agree with your view of the case, but to the extent that there are differing interpretations of Brooks out there, doesn't that mean we have to defer to the decision of the ICA in this case? I don't think so. Why not? Because of the clear language of Brooks itself, which tells what – I mean, the Brooks rule is the rule here. The ICA's rule crafts further exceptions to Brooks, which the United States Supreme Court has never recognized, and this circuit has never recognized. So you have a clear rule from the United States Supreme Court. You can't just make up some exception, even if some other court did so. And here we have – Well, the problem is there are differing interpretations coming from the different circuits, and to the extent that we look at this from the lens of habeas, it's a little different posture, is it not? Well, I don't think so, and particularly because the – The point is we're not sitting in direct appeal. No, I get that. In which case, we might have decided the case another way. But to the extent that there are cases out there that go both ways, doesn't that lead us to the conclusion that it would not be unreasonable for the ICA to find out – to decide the case the way they did? I don't think that's – no, it was unreasonable. And it was unreasonable because the court had a record – both records, the trial court record from the time of the trial and the trial court record from the time of remand, established beyond any question that Mr. Kukia planned to call Mr. Loher, if he called him at all, as his last witness. And so there's a clear violation of the right to counsel aspect of Brooks, which is that the trial court can't deprive the defendant of his right to counsel in deciding when he will testify. But I'm not sure that gets to the thrust of Judge O'Scanlan's question. Essentially, if we look at the determination by our colleagues on the Second Circuit and the fact that the ICA essentially adopted the narrower interpretation of Brooks that the Second Circuit adopted, why doesn't this case fall into the Supreme Court's language about where fair-minded jurists could disagree, how can it be objectively unreasonable for the ICA to agree with the Second Circuit's interpretation? Well, as I said, I think the easiest way to deal with that is just to look at the failure of appellate counsel to render effective assistance. And we know for a certainty what would have happened if he had done so. But you waived that, didn't you? He waived it. You waived it. I'm sorry. Yeah. So he can't even, he shouldn't even be arguing that. I mean, I should win that. So we can't rely on that, right? What's that? But is that dispositive? I think so, because it's a separate issue in this case in which he may very well prevail because of the waiver. But is that dispositive of the entire case? Well, it's not dispositive of the apprendi claim, but it's, but we haven't talked about that. But I think it's... Well, I thought he conceded the apprendi claim. We can ask him when he gets back up. I thought he did. I thought, well, I mean, I'll ask him when he gets there, but I thought this case at a minimum was going to have to go back for resentencing. Yeah, but I think it also needs to go back for a new trial because of the Brooks problem. How old is this case now? The trial was in the November of 2000. 2000? Yeah. So we're going to go back and retry a 15-year-old case with a witness who may or may not be available at this point? Well, there's a transcript, but, you know, that happens. Yes, it does. No question about it. Thank you, counsel. Your time has expired. Mr. Vinson, your time has expired, but I believe that my colleague wants to ask you a question. You understand the question? Yeah, it was about the apprendi claim. Yeah. I hadn't conceded it. Had not? I had not. I didn't respond to the magistrate's findings, fact, and recommendation, but the Ninth Circuit precedent is that matters of law aren't necessarily waived just because I don't . . . But I thought you said affirmatively in your pleadings before the district court that you urged the district court to adopt the magistrate judge's R&R. Well, I'll have to look at my opening brief, but I may have said that about his findings with respect to the Brooks issue. Okay. The statement was more open-ended than that. I read it as saying adopt the whole thing, but it wasn't qualified in that regard. And to be honest with you, a whole series of these CAWA-type cases have come down, and I'm not expecting this court to necessarily come up with any different . . . Well, I mean, the problem is that the Hawaii statute requires the circuit court judge to make a factual finding of dangerousness to the community. It's more than just a finding of prior sex offenses, right? Basically, it's a prediction. Yeah. But, I mean, that is a fact that must be found by some trier of fact . . . That's right. . . . in order to enhance or, in essence, increase the amount of punishment. To me, that looks like a pretty clear Apprendi violation. I mean, if you want to call it a fact, then it is. And I think that in Maugatega, the Hawaii Supreme Court realized that, well, they saw the writing on the wall, and that's the way it's going. But my argument, well, I guess the ICA's argument is that, you know, the state of Washington gets reposed for all those cases that were decided, you know, were final on direct appeal before Blakely was decided, and the federal system, federal prosecutors get reposed for all those cases that were decided on direct or final on direct appeal before Booker was decided. And then recently, well, the latest one was Cunningham, and the state of California gets reposed for all those cases that were final on direct appeal before Blakely. So, we're saying . . . If he's served more than 13 years and four months now, would he be eligible for parole? I guess so. He would have an open term of 20, and it's hard. I think it's just speculation for me to say what the parole board is going to do. They pretty much have almost total control over what is . . . Thank you, Mr. Vincent. Your time has expired. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Tallman, Smith